**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**PARRIS HILL                                                                              PLAINTIFF
#0033839**

V.                          NO. 3:21-cv-165-DPM-ERE

**GREENE COUNTY,** *et al.*                                                    **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.     Procedures for Filing Objections

This Recommendation for dismissal has been sent to United States District Chief Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Chief Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

### II.    Introduction

On August 17, 2021, Plaintiff Parris Hill, a pre-trial detainee at the Greene County Detention Center ("Detention Center"), filed this civil rights lawsuit *pro se*

under 42 U.S.C. § 1983. *Doc. 2*.[1] Mr. Hill paid the statutory filing fee. *Doc. 4*. He is currently proceeding on excessive-force claims against Defendants Morgan Robinson, Felisha Rowland, Wesley Massing,[2] Dillon Mason, and Daniel Chad.[3] Mr. Hill sues each Defendant in his or her official and individual capacities, seeking compensatory damages and unspecified injunctive relief.

Defendants have filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 26, 27, 28*. They argue that: (1) Mr. Hill's official-capacity claims must be dismissed because he presents no basis for municipal or county liability; and (2) Mr. Hill's individual-capacity claims must be dismissed because each Defendant is entitled to qualified immunity.[4]

---

[1] Although Mr. Hill originally filed this case as a multi-plaintiff case, pursuant to Court policy, this lawsuit was separated into three cases and each Plaintiff (Parris Hill, Clay Jackson, and Eric Gallwin) was allowed to pursue his individual claims in separate lawsuits.

[2] The Clerk is instructed to update the docket sheet to reflect the full and correct names of the following Defendants: (1) Felisha Rowland, currently misidentified as "Falicia Rowland;" (2) Morgan Robinson, currently misidentified as "Morgan Robertson;" and (3) and Wesley Massing, currently misidentified as "Massey."

[3] The Court previously dismissed Mr. Hill's claims against Greene County, the Greene County Detention Center, Alicia Hubble, Alex Muary, Brent Cox, Cody Kelly, Glen James, Charles Moss, Shanchaze Cheyanne, Zack, Perkins Rynesha James, Kendra Caldwell, Justin Kyob, Brad Carter, Robert Case, Wayne Brant Tristan Greasy, Hayden Hartsfield, and Dane Swinney. *Doc. 12*.

[4] In addition, Defendants argue that Mr. Hill's claims for compensatory damages must be dismissed because he suffered no physical injury. Because the Court recommends summary judgment in Defendants' favor for other reasons, it does not address this argument.

Mr. Hill has filed a response (*Doc. 30*), and the motion is ripe for review.[5] For the reasons stated below, Defendants' motion for summary judgment should be granted.

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See Fed. R. Civ. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

---

[5] Because Mr. Hill failed to file a statement of disputed facts, the facts contained in Defendants' statement of undisputed facts are deemed admitted. See Local Rule 56.1(c).

IV:     **Background**

   1.     **Defendants' Version of Events**

The following facts are taken from an authenticated copy of Mr. Hill's jail records (*Docs. 28-1, 28-2*) and sworn affidavits submitted by Defendant Wesley Massing (*Doc. 28-3*); nonparty Correctional Officer ("CO") officer Dylan Works (*Doc. 28-4*); Defendant Morgan Robinson (*Doc. 28-5*); and Defendant Felisha Rowland (*Doc. 28-6*),

On December 2, 2020, Defendant Wesley Massing was attempting to escort Mr. Hill to his cell when he refused to leave the day room. *Doc. 28-3 at 1*. CO Works, Sergeant Dane Barnum, and Defendant Robinson were called to the scene to assist Defendant Massing. *Docs. 28-3 at 1, 28-4 at 1, 28-2 at 24-25*. When they arrived, Mr. Hill was sitting at a table in the day room holding a broom. *Id*.

CO Works entered the pod and twice instructed Mr. Hill to go to his cell. *Id*. Mr. Hill refused both orders. *Id*.

As CO Works, Sergeant Barnum, and Defendant Robinson approached Mr. Hill, he threw the broom,[6] and walked toward them in an "aggressive manner." *Id*. CO Works then attempted to escort Mr. Hill to his cell. *Docs. 28-3 at 2, 28-4 at 2,*

---

[6] According to the incident report prepared by Officer Works, Mr. Hill threw the broom down. *Doc. 28-2 at 24*. According to the affidavits provided in support of Defendants' motion for summary judgment, Mr. Hill threw the broom in Officer Works, Sergeant Barnum, and Defendant Robinson's direction. *Docs. 28-3 at 1, 28-4 at 1, 28-5 at 1*.

*28-5 at 2*. Mr. Hill pulled away from CO Works and started yelling at the officers while making fists with his hands. *Id*. CO Works and Sergeant Barnum then used force to place Mr. Hill on the ground. *Id*. When Mr. Hill was taken to the ground, he caught himself with his hands. *Id*. When the officers attempted to handcuff Mr. Hill, he jerked his hands away from them. *Id*. In addition, Defendant Robinson held Mr. Hill's legs because he was attempting to kick the other officers. *Id*.

Mr. Hill then began fighting for control of his hands. *Doc. 28-6 at 1*. At that time, OC pepper spray was deployed to gain control of Mr. Hill. Defendants Robinson and Rowland were then able to handcuff him. *Id*.

Immediately following the incident, officers decontaminated Mr. Hill. *Id*.

### 2. Mr. Hill's Version of Events

The Court notified Mr. Hill that in responding to Defendants' motion for summary judgment, he could not rest on mere allegations and had to "meet proof with proof." *Doc. 29 at 1*. The Court explained that his response should include affidavits, jail records, or other evidence demonstrating a genuine issue of material fact for trial and that any affidavit submitted must be either sworn and signed before a notary or executed under the penalty of perjury. *Id*.

Rather than follow the Court's directions, Mr. Hill filed a brief, without supporting affidavits or other evidence. *Doc. 30*. In that filing, he acknowledges that he held a broom when Defendants first approached him, but he states that he dropped

5

it to his side and did not throw it at the officers. *Id. at 1*. Mr. Hill fails to address Defendants' evidence that he made fists and yelled at them, physically resisted their attempts to take him to his cell, and began kicking and fighting for control of his hands once he was on the ground. Instead, he argues that Defendants exerted excessive force by choking him and spraying him with mace after he told them he was "going down." *Id*. Mr. Hill's unsworn account cannot defeat Defendants' evidence. *See Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (citing Fed. R. Civ. P. 56(e)) ("We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact."); *see also Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence.").

The sole evidence recounting Mr. Hill's version of events properly considered on summary judgment review is his June 29, 2022, sworn deposition testimony, which supplies the following information.[7]

---

[7] Mr. Hill's amended complaint, the only pleading addressing his remaining excessive force claims, is neither verified or certified and therefore not the equivalent of an affidavit. See *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (citations omitted) ("Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint

On December 4, 2020, Mr. Hill was on his "hour out," when "they" cut it short and told him to return to his cell. *Doc. 28-7 at 6*. Mr. Hill then "tried to create a scene" and requested to talk to the jail administrator. *Id at 7, 9*. When Mr. Hill refused to return to his cell, Defendant Mason attempted to walk him to his cell, and Mr. Hill "struggled." *Id*. Next, Defendants Dillon, Massing, Rowland, and Robertson "grabbed" Mr. Hill, and he continued physically resisting. *Id at 7-8*. "At the same time this was happening," an unidentified officer ordered Mr. Hill to go to the ground, Mr. Hill stated he was "going down," officers attempted to Mr. Hill around to face them, and in the process, Mr. Hill went to the floor, hitting his head on a table seat on the way down. *Id. at 8*.

According to Mr. Hill, as he lay face down on the floor with his hands beneath him, "excessive force came into play." *Id. at 11*. He recalls that after he "fell," unidentified officers were "all grabbing" him and "kind of choked" him." *Id. at 12*. When asked which officer choked him, Mr. Hill explained that he wasn't facing and could not see the officers, but he believes Defendant Morgan might be the officer who choked him because he recalls that Defendant Morgan told him to "go to sleep." *Id. at 11*.

---

need not be repeated in a responsive affidavit in order to survive a summary judgment motion.")

Mr. Hill recalls that he "couldn't talk or breath" or comply with orders to put his hands in cuffs, and an officer, whom he could not see but he believes was Defendant Rowland, "came from the side" and sprayed him with mace. *Id. at 14*. Finally, Mr. Hill recalls that only a few minutes after he was sprayed, Defendants escorted him out of his cell for decontamination.

## V. Discussion

### 1. Official-Capacity Claims

Mr. Hill's claims against Defendants in their official capacities are, in effect, claims against Greene County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). A local government may be held liable under § 1983 only where constitutional rights were violated by an "action pursuant to official [county] policy" or misconduct so pervasive among non-policymaking employees "as to constitute a 'custom or usage' with the force of law." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658, 691 (1978)). Here, Mr. Hill fails to allege any facts or present any evidence showing that a county policy or custom caused him to suffer a constitutional injury. Accordingly, his official-capacity claims fail and should be dismissed.

### B. Qualified Immunity

The doctrine of qualified immunity shields a government employee from personal liability under § 1983 so long his conduct, taken within the scope of his

duties, did not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense of qualified immunity at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 129 (2009). In this case, each Defendant is entitled to qualified immunity because Mr. Hill fails to come forward with facts showing the deprivation of a constitutional right.

Because Mr. Hill was a pretrial detainee at the time in question, to prove that he was subjected an unconstitutional use of force, he must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Objective reasonableness turns on the facts and circumstances of each case. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. In addition, a court must consider the

government's legitimate interest in managing the detention facility. *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Factors relevant to assessing the objective reasonableness of the force used include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id*. (citing *Graham*, 490 U.S. at 396). "Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

It is undisputed that Mr. Hill refused multiple orders to return to his cell and attempted to "create a scene."  Defendants' undisputed evidence shows that Mr. Hill: (1) refused two direct orders to return to his cell; (2) walked toward officers in an aggressive manner; (3) physically resisted and pulled away when officers attempted to take him to his cell, (4) yelled at officers, with his fists clenched; and (5) once on the ground, Mr. Hill began kicking the officers and refused to show his hands for cuffing.

Mr. Hill acknowledges that he physically resisted officers' efforts to take him to his cell. He claims, however, that amid the struggle, he suddenly stated that he

was "going down," which, he believes, put officers on notice that he would no longer resist, making the continued use of force unnecessary. However, Mr. Hill does not deny that he kicked at officers even after he was on the ground. According to Mr. Hill, after he said he was "going down," officers proceeded to "kind of" choke him, which hampered his ability to follow orders to show his hands, and when he failed to do so, he was sprayed with mace.

Even accepting Mr. Hill's version of events, he presents no genuine issues of fact for trial. As a threshold matter, in deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group" and must consider each Defendant's conduct to determine whether evidence against that "*individual officer* [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)). In deposition, Mr. Hill identified only two Defendants alleged to have used excessive force against him. He stated that although he could not see the officers after he fell to the ground, the point at which he claims excessive force was used, he believes that Defendant Morgan choked him, and Defendant Rowland sprayed him with mace. Accordingly, those are the only two Defendants against whom Mr. Hill could even arguably proceed against at trial.

Considering Mr. Hill's aggressive demeanor and sustained physical resistance, a reasonable officer on the scene would not have perceived that a sudden

11

claim that he was "going down" meant that he had relented and ceased resisting. Using force against a detainee who, although restrained, remains non-compliant may be constitutionally permissible. See *Ryan v. Armstrong*, 850 F.3d 419, 428 (8th Cir. 2017) (qualified immunity barred excessive-force claims based on officers twice tasing and placing their body weight on a pretrial detainee for three minutes, when the detainee was on the ground in the prone position but still physically resisting and ignoring directives).[8]

Mr. Hill's ambiguous recollection that Officer Mason "kind of" choked him fails to save his claim. He does not specify the means of choking employed or describe how long it lasted. Even assuming that Mr. Hill's breathing was somehow momentarily impeded, he does not claim that he suffered any injury or trauma as a result. Although this factor is not dispositive, "the extent of the injury may . . . provide some indication about the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Finally, because Mr. Hill kicked at officers and continued his physical resistance once on the ground, no reasonable factfinder could conclude that

---

[8] In contrast, court have found that "using force without warning against a compliant pretrial detainee who was agitated but not posing an immediate safety or security threat violated the Due Process Clause." *Fuller v. Hafoka*, 2021 WL 3036907, at *14 (D. Minn. July 19, 2021) (citing *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 861 (8th Cir. 2014) and *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014)).

Defendant Rowland's use of mace, a final measure to gain control, violated Mr. Hill's constitutional rights.[9]

Accordingly, Defendants are entitled to qualified immunity.

## VI.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.   Defendants' motion for summary judgment (*Doc. 26*) be GRANTED.

2.   Mr. Hill's claims against Defendants be DISMISSED, with prejudice.

3.   The Clerk be instructed to close this case.

Dated this 29th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] See *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) ("the few cases where we denied summary judgment in Eighth Amendment excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary "super-soaker" quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force").